ORIGINAL

FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA 2011 MAR -1 PM 3: 13

DUBLIN DIVISION

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| LAWRENCE WINKELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 310-076 |
| | ) | |
| JOSE MORALES, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at the Johnson State Prison ("JSP") in Wrightsville, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

## I. BACKGROUND

Plaintiff names the following Defendants in his complaint: (1) Jose Morales, Warden at JSP; (2) Tim Jones, Deputy Warden of Care and Treatment at JSP; (3) Barry Henderson, Doctor at JSP; (4) Anthony Washington, the former Warden of JSP; (5) Keith Morris, the Grievance Coordinator at JSP; (6) Brian Owens, Commissioner of the Georgia of

Corrections; (7) Jamie Clark, Deputy Warden at JSP; and (8) Robert Spaulding, Mental Health Director at JSP. (Doc. no. 1, p. 4.)

As an initial matter, the Court notes that Plaintiff previously filed a suit against several of the Defendants in this case for claims arising out of the same events alleged here. Winkels v. Washington, CV 309-037 (S.D. Ga. May 8, 2009) (hereinafter "CV 309-037"). In CV 309-037, the Court allowed Plaintiff to proceed with some of his claims following an initial screening but later granted a request by Plaintiff to dismiss his case voluntarily so that he could join an appeal with other inmates.[1] Id., doc. no. 54. While there is a significant overlap between CV 309-037 and the instant case, the cases are not identical. The Court will therefore proceed to screen the complaint in this case based solely on the allegations set forth herein.

Plaintiff, who is a mental health patient, asserts allegations concerning several occurrences and conditions of his confinement at JSP. The Court will summarize these allegations according to the claims to which they relate.

### A. Allegations Relating to Exposure to Environmental Tobacco Smoke

Plaintiff asserts that Defendants Morales, Washington, Owens, Spaulding, and Jones have exercised their authority over the prison so as to allow inmates with mental health issues to purchase tobacco products and smoke in the living quarters at JSP, which has resulted in Plaintiff being exposed to Environmental Tobacco Smoke ("ETS"). (Doc. no. 1, pp. 4-5.) Plaintiff asserts that Defendants Washington, Morales, and Owens have instituted

---

[1] The Court specified that his voluntary dismissal would not be conditioned on Plaintiff successfully joining the other inmates' appeal. (Doc. no. 54, p. 2.)

a policy of allowing tobacco products to inmates with mental health issues, yet have not provided a proper place for such inmates to smoke, such that smoking often occurs in the living quarters at JSP. (Id. at 5-6.) Moreover, Plaintiff alleges that Defendants Morales, Washington, Owens, Spaulding, and Jones all condone the use and sale of tobacco products to mental health inmates at JSP, who are unaware of the dangers of ETS exposure, despite a previous announcement by Defendant Morales that JSP would be a tobacco-free facility. (Id.)

According to Plaintiff, he has suffered serious breathing problems as a result of his forced ETS exposure. (Id.) Plaintiff also claims that the sale of tobacco to inmates with mental health issues violates the Americans with Disabilities Act. (Id. at 6.) Plaintiff alleges that he has filed several grievances regarding his exposure to ETS, but has not been provided a smoke-free environment. (Id. at 5-6.)

### B. Allegations Relating to Medical Treatment, Invasion of Bodily Privacy, and Negligent Hiring

Plaintiff alleges that he fell and injured his back when he slipped on a floor that was wet because of a leaky roof. (Id. at 7.) According to Plaintiff, he saw Defendant Henderson, a doctor at JSP, regarding his back injury and breathing problems resulting from ETS exposure. (Id.) Plaintiff states that Defendant Henderson "violated [his] constitutional rights by being more concerned to play with [his] penis than to treat [his] back injuries and breathing problems." (Id.) Plaintiff does not provide the date on which these events allegedly occurred. Plaintiff further alleges that Defendant Henderson is a convicted pedophile, and he contends that all Defendants have violated his rights by hiring Defendant

3

Henderson and allowing him to work with inmates that have mental health problems. (Id.)

### C. Allegations Relating to Prison Mail Procedure

Plaintiff avers that Defendant Clark violated his rights by establishing improper rules for indigent legal mail. (Id. at 9.) Specifically, Plaintiff complains that under these rules, he must stand in the inmate store call line for hours to turn in legal mail. (Id.) In addition, Plaintiff alleges that because of the rules concerning when inmates are permitted to go to store call, he is only permitted to send legal mail two days per week. (Id.)

### D. Allegations Relating to Prison Grievances

With regard to the grievance procedure at JSP, Plaintiff maintains that Defendant Morris, the Grievance Coordinator, told counselors not to sign his formal grievances. (Id. at 8-9.) Plaintiff alleges that the counselors therefore refused to sign his formal grievances and appeals, telling him that Defendant Morris, their supervisor, was responsible for such matters. (Id.) However, according to Plaintiff, Defendant Morris's office is in a secured area, which has prevented Plaintiff from filing formal grievances or appeals from the denial of formal grievances. (Id.) Defendant Morris is the only party in this case against whom Plaintiff directs allegations regarding the mishandling of his grievances, and Plaintiff does not specify any specific matters with respect to which he has been unable to file grievances. (Id.) Additionally, Plaintiff contends that the exhaustion requirement of 42 U.S.C. § 1997e is unconstitutional in that the violation of his right to file grievances at JSP prevents him from arguing his constitutional claims in federal court. (Id.)

### E. Relief Sought

Plaintiff requests monetary damages, litigation expenses, and injunctive relief. (Id.

at 12.) With regard to injunctive relief, Plaintiff requests that Defendant Henderson be banned from JSP or prevented from seeing mental health patients, that the Court require smoke-free indoor facilities, and that JSP be required to handle indigent legal mail differently. (Id.)

## II. DISCUSSION

### A. No Claim for Mishandling of Grievances

Plaintiff's claim that his constitutional rights were violated by Defendant Morris's improper handling of his grievances must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State

Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff states that prison officials improperly refused sign certain unspecified grievances because of Defendant Morris' actions. However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff fails to state a claim against Defendant Morris regarding his alleged misdeeds concerning Plaintiff's grievances at JSP.[2] Because this is the only claim

---

[2]Likewise, the absence of any constitutional right to a particular process in handling grievances precludes Plaintiff's claim that his "right to have [a] state grievance procedure" somehow renders the exhaustion requirement of 42 U.S.C. § 1997(e) unconstitutional as it applies to him. (Doc. no. 1, p. 11.) Moreover, the factual basis of this constitutional challenge is unsound, as Plaintiff asserts that the exhaustion requirement of § 1997e "is used against [him] to dismiss his claims in federal court," yet points to no claims in this case, his previous case in this Court, or any other case that have been dismissed on exhaustion grounds (although motions to dismiss on exhaustion grounds were filed in his previous case, Plaintiff's claims in that case were dismissed voluntarily so that Plaintiff could join an appeal with other inmate litigants, CV 309-037, doc. no. 54 (S.D. Ga. June 9, 2010)).

asserted against Defendant Morris, he should be dismissed from this case.

### B. No Claim for Denial of Access to the Courts

In the event that Plaintiff may be trying to assert a denial of access to the courts claim by alleging that Defendant Clark's actions inhibit his ability to send legal mail, his claim fails. To state a viable denial of access to the courts claim, a plaintiff must allege actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement. Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement."). The Eleventh Circuit has clarified the requirements for pursuing a denial-of-access-to-the-courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Here, Plaintiff merely complains about JSP's indigent legal mail procedures, which were purportedly put in place by Defendant Clark. Plaintiff alleges no facts which demonstrate that he had possibly viable claims that were negatively impacted by Defendant Clark's actions or the indigent legal mail procedures. Nor does he say that JSP's procedures for indigent inmates to post legal mail resulted in a dismissal or any detriment to any case. Indeed, Plaintiff never says that he cannot post legal mail -- only that he does not like to follow the rules and procedures for posting such mail. Plaintiff therefore fails to state a denial of access to the courts claim against Defendant Clark.[3] Because this is the only claim asserted against Defendant Clark, he should be dismissed from this case.

### C. No Claim for Invasion of Bodily Privacy

The Court next addresses Plaintiff's allegation that Defendant Henderson, a doctor at JSP, "was more concerned to play with [Plaintiff's] penis than to treat [his] back injuries and breathing problems." (Doc. no. 1, p. 7.) It is well-established that prisoners retain a constitutional right to bodily privacy. Fortner v. Thomas, 983 F.2d 1024, 1027 (11th Cir. 1993) (viable bodily privacy claim where "female officers . . . solicited . . . [male prisoners] to masturbate and otherwise exhibit their genitals for the female officers' viewing"). However, "Fortner outlined a very narrow privacy right involving people's 'special sense of privacy in their genitals' and noted that 'involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.'" Boxer X v. Harris, 437 F.3d 1107, 1110-111 (11th Cir. 2006) (quoting Fortner, 983 F.2d at 1030).

---

[3]Because Plaintiff has failed to state a claim concerning the mail procedures at JSP, he is not entitled to the injunctive relief that he seeks with regard to JSP's mail procedures.

Here, Plaintiff's vague allegation that Defendant Henderson was "concerned to play with" his genitals is insufficient to state a claim for a violation of the "very narrow privacy right" outlined in Fortner. See id. Plaintiff does not allege involuntary exposure of his genitals or compelled nudity, as was alleged in Fortner, and Defendant Henderson is not a member of the opposite sex. Accordingly, the Court finds that Plaintiff has failed to state a claim for invasion of bodily privacy against Defendant Henderson.[4, 5]

### D. No Claim for Deliberate Indifference to Serious Medical Need

Turning to Plaintiff's allegations against Defendant Henderson, the Court finds that Plaintiff has not stated a claim for deliberate indifference his health. Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison

---

[4]To the extent Plaintiff may be attempting to assert an Eighth Amendment claim based on these allegations, this attempt also fails. The Eleventh Circuit has recognized that "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." Boxer X, 437 F.3d at 1111. However, Plaintiff has not alleged repeated incidents by Defendant Henderson, nor is the Court persuaded that the alleged conduct is so severe as to state a viable Eighth Amendment claim. See id. (concluding that there must be an objectively, sufficiently serious injury to prevail on Eighth Amendment sexual assault claim, which requires more than *de minimis* injury). Indeed, Plaintiff has not alleged that he suffered any kind of psychological or physical pain as a result of the alleged incident. See Farmer v. Brennan, 511 U.S. 825, 835 (1994) (noting that prison officials violate the Eighth Amendment through "the unnecessary and wanton infliction of pain").

[5]The Court's determination that Plaintiff has failed to state a claim against Defendant Henderson for invasion of bodily privacy or sexual abuse forecloses the possibility that any Defendant was deliberately indifferent to Plaintiff's constitutional rights by hiring or failing properly to supervise Defendant Henderson. See Garczynski v. Bradshaw, 573 F.3d 1158, 1170 (11th Cir. 2009) (absent a determination that a subordinate committed a constitutional violation, there can be no claim for deliberate indifference to constitutional rights under § 1983 based on hiring or improperly supervising that subordinate). Plaintiff's failure to state a claim against Defendant Henderson for invasion of bodily privacy or sexual abuse also precludes any of the injunctive relief requested regarding Defendant Henderson – i.e., that he removed from his position and/or prevented from attending to mental health patients.

9

officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39; Thomas v. Bryant, No. 09-11658, 2010 U.S. App. LEXIS 17419, at *35-36 (11th Cir. Aug. 20, 2010) (noting that the deliberate indifference standard requires that a prison official disregarded an excessive risk of which he was actually aware).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted); see also Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). To state a viable Eighth Amendment claim, Plaintiff must allege that the defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams, 61 F.3d at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or

10

excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Allegations of mere negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

The extent of Plaintiff's allegations regarding his medical treatment is that Defendant Henderson was not sufficiently concerned with treating Plaintiff's back injuries and breathing problems. (Doc. no. 1, p. 7.) First, this allegation is simply too vague to support an Eighth Amendment claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim). Second, assuming that Plaintiff's back injuries and breathing problems constituted objectively serious medical needs, Plaintiff's allegations are insufficient with regard to Defendant Henderson being deliberately indifferent to those needs. Plaintiff's averment that Defendant Henderson was not sufficiently concerned with Plaintiff's medical problems gives no indication of the type of treatment Defendant Henderson provided or how that treatment was inadequate; nor do Plaintiff's allegations indicate how Defendant's medical care affected the conditions from which Plaintiff was purportedly suffering. Plaintiff has therefore failed to allege medical care that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Adams, 61 F.3d at 1544. Indeed, his allegations do not even rise to the level of negligence or malpractice, which do not amount to deliberate indifference to a medical need. Harris, 941 F.2d at 1505. Accordingly, Plaintiff has failed to state a claim against Defendant Henderson for deliberate indifference to a serious medical need.

### E. No Claim for Violation of Americans with Disabilities Act

In his complaint, Plaintiff asserts, in conclusory fashion, that "allow[ing] smoking within mental health units and allow[ing] tobacco products to be sold to mental health inmates [is] against the Americans with Disabilities Act." (Doc. no. 1, p. 6.) While the Court has addressed Plaintiff's ETS claims under the Eighth Amendment in a separate Order, Plaintiff's ETS allegations do not state a claim for relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*

To establish a prima facie case under Title II of the ADA, a plaintiff must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bricoll v. Miami-Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007). The Court is mindful that state prisons qualify as public entities for ADA purposes. United States v. Georgia, 546 U.S. 151, 154 (2006). Here, however, Plaintiff's generalized allegations about Defendants selling tobacco to mental health inmates and allowing smoking does not explain how Plaintiff was discriminated against or denied the benefits of any services, benefits, or activities offered by JSP; nor do Plaintiff's generalized allegations suffice with regard to showing how a specific disability suffered by Plaintiff caused any such denial or discrimination. Accordingly, Plaintiff has failed to state claim under the ADA.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims for mishandling grievances, denial of access to the courts, invasion of

12

bodily privacy, deliberate indifference to a serious medical need, and violation of the ADA be **DISMISSED**. The Court further **RECOMMENDS** that Defendants Morris, Clark, and Henderson be **DISMISSED** from this case.[6]

SO REPORTED and RECOMMENDED this ___ day of March, 2011, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Morales, Washington, Owens, Spaulding, and Jones based on Plaintiff's Eighth Amendment ETS claims.