FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JUL 25 AM 11: 22

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| LAWRENCE WINKELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 310-076 |
| | ) | |
| JOSE MORALES, Warden, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Johnson State Prison ("JSP") in Wrightsville, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis*. The case is now before the Court on the parties' cross motions for summary judgment. (Doc. nos. 40, 43.) The parties have filed responses to each other's summary judgment motions, and Defendants have filed a reply in support of their summary judgment motion.[1] (Doc. nos. 49, 50, 53.) For the reasons set forth below, the Court

---

[1] Plaintiff set forth his response to Defendants' motion for summary judgment in the same document in which he moves for appointment of counsel. The Clerk filed the document twice; the first version (doc. no. 50) is docketed as a response to Defendants' summary judgment motion, and the second version (doc. no. 51) is docketed as a motion for appointment of counsel, which the Court has denied in a simultaneously issued Order.

Plaintiff additionally filed a motion to strike Defendants' reply brief and certain other filings, which the Court has denied in the simultaneously issued Order. In Defendants' response to Plaintiff's motion to strike (doc. no. 56), they point out that Plaintiff's response to their summary judgment motion is untimely in that he failed to file it within the extended time period set forth in the Court's prior Order (doc. no. 46). In that Order, which was issued when the time for responding to Defendants' motion had expired, the Court granted Plaintiff

**REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

I.   **FACTS**

Plaintiff has been incarcerated at JSP since 2005, with brief stints of confinement at other facilities due to unspecified medical issues. (Doc. no. 40-3 (hereinafter "Pl. Dep."), pp. 18-19, 37-38; doc. no. 40-7 (hereinafter "Jones Aff."), ¶ 11 & Ex. 15.) Defendant Washington served as the Warden of JSP from July 1, 2005, through December 31, 2009. (Doc. no. 40-4 (hereinafter "Washington Aff."), ¶ 3.) Defendant Morales succeeded Defendant Washington as Warden of JSP, and he continues to hold that position. (Doc. no. 40-5 (hereinafter "Morales Aff."), ¶ 3.) Defendant Jones has worked as the Deputy Warden of Care and Treatment at JSP since April of 2009, and Defendant Spalding has been the Mental Health Director at JSP since March of 2010. (Jones Aff. ¶ 3; Doc. no. 42-1[2] (hereinafter "Spalding Aff."), ¶ 3.) Defendant Owens is the Commissioner of the Georgia

---

an extension of time in which to respond to Defendants' motion for summary judgment. Plaintiff's response is dated 10 days after the extended deadline. (Doc. no. 50, pp. 1, 8.) Nevertheless, in an abundance of caution, the Court has taken the response into account, concluding that it makes no difference in the resolution of Plaintiff's claims for the reasons set forth below.

[2]Among the documents submitted in support of Defendants' motion for summary judgment is an affidavit from Defendant Spalding. (Doc. no. 40-8.) Although Defendant Spalding's affidavit attached to the motion for summary judgment is neither signed nor notarized, Defendants remedied this deficiency by filing a substitute affidavit for Defendant Spalding that is signed and notarized. (Doc. no. 42-1.) Therefore, the Court will disregard the prior, unsigned version of the affidavit.

Department of Corrections ("GDOC"), a post he held at all times relevant to this action. (Pl. Dep., p. 16.)

Plaintiff commenced this case in September of 2010, and in the sole claim with which he was allowed to proceed,[3] he asserts that Defendants acted with deliberate indifference to his health by exposing him to unreasonably high levels of environmental tobacco smoke ("ETS"). (See doc. no. 1.) In particular, Plaintiff alleges in his complaint that Defendants exercised their authority over the prison so as to allow inmates with mental health issues, such as those who live in Plaintiff's dormitory, to purchase tobacco products and smoke in the prison. (Id. at 5-7.) Plaintiff further alleges that this resulted in his being unwillingly exposed to ETS in his living quarters, which caused him to suffer breathing problems. (Id.)

### 1. Plaintiff's ETS Exposure at JSP and Medical History

During his incarceration at JSP, Plaintiff has been housed primarily in the E dormitory, which is a unit for inmates who have mental health issues of varying degrees of seriousness. (Pl. Dep., pp. 18-19, 37-38; Jones Aff. ¶ 11 & Ex. 15; Spalding Aff. ¶ 5.) Plaintiff maintains that multiple inmates housed in the E dormitory would buy cigarettes from the prison store and smoke them indoors in the dormitory, although he provides no concrete information as to the levels or frequency of his ETS exposure. (Doc. no. 1, pp. 6-8; doc. no. 43, p. 4.) Plaintiff testified that at the time of his deposition his cell mate was a non-smoker, but he stated that many of his past cell mates were smokers. (Pl. Dep., pp. 41-44.) Plaintiff provides similar testimony in a signed "Declaration," stating in general terms that

---

[3]Plaintiff's other attempted claims, along with several other individuals named as defendants in the complaint, were dismissed when his complaint was screened pursuant to 28 U.S.C. § 1915(e) & 1915A. (See doc. nos. 13, 21.)

Defendants permitted mentally ill inmates at JSP to purchase tobacco products and smoke in the living units. (Doc. no. 43, p. 4.) Plaintiff has also submitted a "Declaration" from another inmate in the E dormitory, Randall Bingham, who states that he smoked tobacco products in the housing unit every day from December of 2008 to October of 2010.[4] (Id. at 3.)

Plaintiff has never been diagnosed with any sort of respiratory condition. (Pl. Dep., pp. 31-32; Spalding Aff. ¶¶ 6-7; doc. no. 40-6 (hereinafter "Hall Aff."), ¶ 6.[5]) However,

---

[4]Inmate Bingham does not indicate whether, or how much, he smoked in Plaintiff's presence. (Doc. no. 43, p. 3.)

[5]This document consists of an affidavit from Mitzi Hall, a registered nurse who works as the Interim Director of Nursing at JSP and who provided the information in the affidavit based on her own personal knowledge, as well as Plaintiff's prison medical records. (Hall Aff. ¶¶ 1-4.) Plaintiff contends that the Court should not consider this affidavit because Ms. Hall is not an expert and because her affidavit is based on "hearsay opinions" and "records." (Doc. no. 45, p. 13.)
However, as Defendants point out in response, they are not offering Ms. Hall's affidavit as any type of expert opinion testimony, and her statements in the affidavits merely provide the content of the records rather than offering her opinion as to their meaning. (Doc. no. 49, p. 14 n.8.) Nor is the inclusion of medical records improper, as Federal Rule of Civil Procedure 56(c)(1)(A) allows a party moving for summary judgment to include "documents," as well as affidavits, in support of the motion. Additionally, while Rule 56(c)(2) allows a party to object that material should be excluded because it "cannot be presented in a form that would be admissible in evidence," Plaintiff has not alleged, let alone established, that any of the material in or attached to Ms. Hall's affidavit cannot be presented in a form that would be admissible in evidence.
Furthermore, courts may consider a hearsay statement in ruling on a summary judgment motion if the statement could be reduced to admissible evidence at trial. Macuba v. DeBoer, 193 F.3d 1316, 1323-1324 (11th Cir. 1999). Here, the medical records satisfy this standard in that they fall within the business records exception to the hearsay rule. Fed. R. Evid. 803(6); see also Ekokotu v. Fed. Express Corp., 408 F. App'x 331, 335 (11th Cir. 2011) ("[A] person who testifies concerning documents admitted pursuant to the business records exception to the hearsay rule need not have prepared the documents 'so long as other circumstantial evidence and testimony suggest their trustworthiness.'" (quoting Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1259 (11th Cir. 1983))). In addition, Plaintiff's statements regarding his breathing complaints that are documented in the medical records

4

Plaintiff maintains that he is allergic to smoke because, although he has never been diagnosed with such an allergy, he finds it difficult to breathe when he is exposed to ETS. (Pl. Dep., pp. 77-78.) Plaintiff testified that, during his incarceration at JSP, he has reported to the medical department four or five times because he was experiencing difficulty breathing. (Id.)

Defendants have produced medical records documenting three instances in which Plaintiff has complained of breathing problems during the last several years. On February 4, 2009, during which time Plaintiff had temporarily been transferred to a different facility, he complained that he had experienced a bad panic attack, which resulted in chest pain and difficulty breathing. The February 4, 2009 treatment notes disclose no complaints regarding ETS exposure. Plaintiff was seen by a physician, who ordered a chest X-ray and a myocardial image, neither of which revealed any irregularities. (Hall Aff. ¶ 8 & Exs. 10-12.)

Plaintiff again complained of breathing problems during a visit to the JSP medical clinic on November 2, 2009. On that occasion, Plaintiff complained of shortness of breath and gasping for air in the middle of the night. Again, the treatment notes do not indicate any complaints concerning ETS exposure. During the November 2, 2009 visit, JSP medical personnel checked Plaintiff's lungs, administered a peak flow test, and ordered an EKG.

---

at issue may properly be considered because they fit within the hearsay exception for statements made for the purpose of medical diagnosis. Fed. R. Evid. 803(4); United States v. Belfast, 611 F.3d 783, 818-19 (11th Cir. 2010). Therefore, the Court rejects Plaintiff's contention that the Court should exclude this affidavit or the accompanying medical records.

    Additionally, the Court notes that, aside from objecting to the affidavit, Plaintiff does not dispute the information in the affidavit or provide any evidence that contradicts that information. Indeed, in his own deposition testimony, Plaintiff states that prison medical personnel performed several tests related to his pulmonary and cardiac health, none of which revealed any irregularities. (Pl. Dep., pp. 101-103.)

5

None of these tests revealed any problems, and they in fact showed that his lungs were clear, that a healthy amount of oxygen was reaching his lungs, and that he was breathing without difficulty. (Id. ¶ 9 & Ex. 13.)

Plaintiff also reported to the JSP clinic on March 16, 2011 – during the pendency of this action – with complaints of shortness of breath and exposure to ETS. The treatment notes for the March 16, 2011 visit show that medical personnel again administered tests related to his pulmonary function, determining again that his lungs were clear, that he was breathing without difficulty, and that the level of oxygen reaching his lungs was "excellent and not indicative of distress." Plaintiff's medical records indicate that he returned to the clinic on April 13, 2011, and reported that he was feeling fine. (Id. ¶¶ 10 & 14.)

Plaintiff confirmed in his deposition that the only pulmonary related symptom he ever reported during his medical visits was difficulty breathing and that he is not aware of any medical evidence that he suffers from any physical condition related to ETS exposure. (Pl. Dep., pp. 77-80.)

### 2. JSP's Smoking Policies

At all times relevant to this lawsuit prior to October of 2010,[6] the relevant GDOC Standard Operating Procedures ("SOP") prohibited the use of tobacco products by inmates and prison staff inside any building in a state prison facility. (Washington Aff. ¶ 5; Morales Aff. ¶ 5 & Exs. 4, 5 (copies of SOP IIA09-0001 and SOP VH35-0002).) During that time, smoking was allowed in designated outdoor areas, and, according to Defendant Jones, smoke breaks were provided at regular intervals. (Jones Aff. ¶¶ 7-8.) Defendants Washington,

---

[6]As noted previously, Plaintiff commenced this case in September of 2010.

Morales, and Jones attest that they consistently enforced the indoor smoking ban, punishing violators on a case-by-case basis by giving verbal warnings, assigning additional work duties, restricting privileges, or issuing disciplinary reports. (Washington Aff. ¶¶ 6-8; Morales Aff. ¶¶ 7-9; Jones Aff. ¶¶ 9-10, 14.)

In October of 2010, a new GDOC policy went into effect, pursuant to which JSP became a fully tobacco-free facility. The new policy prohibits smoking anywhere on prison grounds by inmates or prison staff. Additionally, the policy prohibits inmates from possessing any tobacco product, and the JSP prison store does not sell any such products. Tobacco products are considered contraband under the new policy, and the punishments for violations include disciplinary reports or criminal penalties applicable to the possession or transport or prohibited items. (Morales Aff. ¶¶ 6, 10 & Exs. 6-8.)

In his "Declaration" submitted in conjunction with his motion for summary judgment, Plaintiff states that "Defendants allowed smoking inside living units and prison cells" in that they failed to issue disciplinary reports for such conduct. (Doc. no. 43, p. 4.) Plaintiff also asserts that prison officials did not provide enough smoke breaks to the inmates in his dormitory, and he states that the outdoor area in which inmates were permitted to smoke was only "one foot outside the front door." (Id.) In the "Declaration" from Inmate Bingham, he states that "everybody smoked in the housing units and cells" and that no prison officials issued him a disciplinary report despite the fact that he smoked cigarettes in the housing unit on a daily basis. (Id. at 3.) However, Inmate Bingham does indicate that prison officials who discovered inmates smoking indoors would sometimes verbally warn inmates not to smoke or assign them the task of cleaning the floor. (Id.) Moreover, Plaintiff testified during his

7

deposition that since the institution of the tobacco free policy, he has witnessed episodes in which prison officials discovered inmates with tobacco products and responded by confiscating the tobacco rather than issuing a disciplinary report.[7] (Pl. Dep., p. 48.)

Plaintiff has only reported a specific inmate for violating the smoking policy on one occasion. In particular, some time in 2011, Plaintiff informed a nurse that his cell mate was smoking cigarettes and marijuana. According to Plaintiff, the same day that he reported this infraction, officers from JSP's Correctional Emergency Response Team came to the cell and removed the inmate, who was then disciplined by being transferred to a segregated confinement unit. (Id. at 45-47.)

Plaintiff also states that some time in 2009, well before the smoking ban went into effect, he saw a correctional officer give a cigarette to an inmate. (Id. at 62-63.) Additionally, he reports that around August of 2010 – again, before the smoking ban – he told a correctional officer that there were cigarette butts left on the ground outside in the area in which inmates were allowed to smoke during that time. (Id. at 50-53.) It is undisputed that Plaintiff never directly informed any Defendant in this action that inmates smoked indoors or that he was exposed to ETS while incarcerated at JSP. (Id. at 61-66.)

---

[7]In addition, Plaintiff attaches an affidavit provided by Defendant Washington in a separate action not involving Plaintiff, which he cites to support his assertion that Defendant Washington allowed inmates in Plaintiff's housing unit to trade and possess tobacco products. (Doc. no. 43, p. 4; doc. no. 45, pp. 30-36 (affidavit of Defendant Washington from Williams v. Wright, CV 309-055 (S.D. Ga. May 10, 2010).) However, as Defendants observe (see doc. no. 49, pp. 10-11 & n.5), the affidavit merely indicates that Defendant Washington investigated an altercation between two inmates in the E dormitory and ascertained that their dispute arose because one owed the other cigarettes. (Doc. no. 45, p. 6.) Notably, the altercation took place in July of 2009, well before the ban on tobacco products, and it is undisputed that inmates were allowed to possess, but not smoke, tobacco products indoors at that time.

8

However, Plaintiff filed ETS-related grievances on three occasions: May of 2009, June of 2010, and September of 2010. (Id. at 102 & Exs. 1-3.) In these grievances, each of which was denied, Plaintiff set forth general allegations of inmates smoking in the housing unit and prison officials inadequately enforcing JSP's smoking policy.[8] (See id.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving

---

[8]Plaintiff appears to have pursued each level of the administrative appeal process with respect to each of his grievances. The grievance documentation indicates that Defendant Washington signed the order denying Plaintiff's first formal grievance and that Defendant Morales signed the order denying Plaintiff's second and third formal grievances. (Pl. Dep., Exs. 1-3.)

[9]For purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

B.   **Merits of Plaintiff's Claims**

In his motion for summary judgment and his response to Defendants' motion for summary judgment, Plaintiff contends that he has established that Defendants were

10

deliberately indifferent to his health prior to the smoking ban by allowing the mentally ill inmates in his housing unit to purchase tobacco products,[10] inadequately enforcing the policy against smoking indoors, and failing to provide sufficient smoke breaks. (Doc. nos. 43, 45, 50.) Defendants contend that they are entitled to summary judgment because Plaintiff cannot show that he was exposed to unreasonably high levels of ETS or that Defendants knowingly disregarded a risk to Plaintiff's health arising from ETS exposure. (See doc. nos. 40-2, 49, 53.) Defendants also assert that they are entitled to qualified immunity.[11] (Doc. no. 42, pp. 15-19.)

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. Accordingly, a prisoner can recover under § 1983 for a violation of the Eighth Amendment if he can show "that prison officials have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (quoting Helling v. McKinney, 509 U.S. 25, 35-36 (1993)) (punctuation omitted). To prevail on such a claim, the prisoner must satisfy two elements, one objective and one subjective. Id.

---

[10]Plaintiff repeatedly argues that allowing mentally ill inmates to purchase tobacco products evinces deliberate indifference because mentally ill inmates lack the self-control and judgment needed to use such products responsibly in accordance with the smoking policy. (See, e.g., doc. no. 45, p. 24.)

[11]Additionally, in their response to Plaintiff's motion to strike certain of their filings, which the Court has addressed in a separate Order, Defendants point out that Plaintiff's motion for summary judgment is untimely in that it is dated 11 days after the extended deadline that the Court established for civil motions, including motions for summary judgment. (See doc. no. 36; doc. no. 43, p. 2; doc. no. 56, p. 2 n.3.) The Court will not reach the issue of timeliness, however, as it determines that Plaintiff's motion for summary judgment should be denied for the reasons set forth below.

"As for the objective factor, the prisoner must show that he himself is being exposed to unreasonably high levels of ETS." Id. In determining whether the prisoner has satisfied the objective element, the Court must inquire whether "the risk to his health is so grave as to violate contemporary standards of decency." Giddens v. Calhoun State Prison, 277 F. App'x 847, 847-48 (11th Cir. 2007) (*per curiam*). Factors relevant to this determination include "the seriousness of the potential harm" and the likelihood that the prisoner will actually suffer an injury to his health as a result of his ETS exposure. Kelley, 400 F.3d at 1284 (quoting Helling, 509 U.S. at 36.)

"As for the subjective factor, the prisoner must show that prison authorities demonstrated a 'deliberate indifference' to his plight." Id. Deliberate indifference requires proof of "three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Cassady v. Donald, 447 F. App'x 28, 30 (11th Cir. 2011) (*per curiam*) (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)); Giddens, 277 F. App'x at 848.

The adoption of a smoking policy is relevant to both elements of an ETS claim. See Kelley, 400 F.3d at 1284. Moreover, a prisoner who shows nothing more than negligent enforcement of such a policy falls short of establishing an Eighth Amendment violation. Id. at 1285. However, "the mere existence of such a policy will not, by itself, satisfy the requirements of the Eighth Amendment; there must be a good faith effort to enforce the policy and the absence of such an effort may result in a finding of deliberate indifference." Bartlett v. Pearson, 406 F. Supp. 2d 626, 632 (E.D. Va. 2005); see also Talal v. White, 403

F.3d 423, 428 (6th Cir. 2005) ("[T]he mere existence of non-smoking pods does not insulate a penal institution from Eighth Amendment liability . . . .").

Here, for the reasons set forth below, Plaintiff cannot satisfy either the objective or subjective elements of his Eighth Amendment ETS claim.

### 1. Objective Element

Regarding the objective element, Plaintiff has come forward with little more than his own averment that inmates in his dormitory, including an unspecified number of his former cell mates, smoked within his housing unit. (Doc. no. 1, pp. 6-8; doc. no. 43, p. 4; Pl. Dep., pp. 41-44.) This general assertion provides no indication as to the levels or frequency of Plaintiff's ETS exposure. See Kelley, 400 F.3d at 1285 (finding the plaintiff's did not satisfy the objective prong by alleging that "other inmates in his pod smoked inside and that the ventilation was insufficient"); cf. Helling, 509 U.S. at 35-36 (noting relevance of the plaintiff's specific assertion that his cell mate smoked five packs a day). Of little significance is the Declaration from Inmate Bingham, who is confined in Plaintiff's housing unit and states, in a general fashion, that he frequently smoked in the housing unit prior to the ban on tobacco products. (Doc. no. 43, p. 3.) As Defendants persuasively argue, Inmate Bingham's assertions offer no evidence of whether or to what extent his illicit use of tobacco products resulted in Plaintiff's exposure to ETS. (Doc. no. 49, p. 11.)

Also relevant to the Court's analysis of the objective element is Plaintiff's medical history. It is undisputed that Plaintiff has never been diagnosed with any sort of respiratory condition. (Pl. Dep., pp. 31-32; Spalding Aff. ¶¶ 6-7; Hall Aff. ¶ 6.) Moreover, Plaintiff's medical records show that numerous tests have demonstrated that Plaintiff is in good health

13

with respect to his lungs and his physiological ability to breathe.[12] (Hall Aff. ¶¶ 8-10 & Exs. 10-14.) The only evidence Plaintiff offers in this regard is his unsubstantiated assertion that he suffers from a smoke allergy. Plaintiff admits that his allergy is self-diagnosed, has never been confirmed by any medical evidence, and is based solely on his observation that he experiences difficulty breathing when he is exposed to ETS. (Pl. Dep., p. 77-78.) As a result, the Court concludes that the medical evidence fails to show that ETS exposure poses any extraordinary risk to Plaintiff's health. See Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992) (explaining that the objective component requires ETS exposure that causes a "serious medical threat, not just discomfort" and that "mere exposure to ETS, without more, does not constitute a deprivation of a prisoner's Eighth Amendment rights"); cf. Cassady, 447 F. App'x at 31 (finding the plaintiff had shown he was particularly susceptible to ETS based on medical evidence that he suffered from reactive airway disease).

The smoking policies in effect at JSP during the time period in question also play a part in the determination of whether Plaintiff can satisfy the objective prong of his ETS claim. It is undisputed that JSP's prior smoking policy, which remained in effect until October of 2010, prohibited smoking inside any building within the prison facility, including Plaintiff's housing unit. Defendants have presented evidence that prison officials enforced this policy by giving verbal warnings, assigning additional work duties, restricting privileges, or issuing disciplinary reports. (Washington Aff. ¶¶ 6-8; Morales Aff. ¶¶ 7-9; Jones Aff. ¶¶ 9-10, 14.) Plaintiff's evidence does not refute the fact that JSP prison officials, including

---

[12]Indeed, the medical records show that the majority of Plaintiff's complaints regarding his breathing relate to panic attacks rather than ETS exposure.

14

Defendants, enforced the indoor smoking ban; however, it suggests that the policy did not eliminate ETS from the prison and that prison officials often punished violators with verbal warnings and assignment of work duties rather than the more serious disciplinary measure of a disciplinary report. (Doc. no. 43, pp. 3-4; Pl. Dep., pp. 41-44.)

Of note, the evidence uniformly shows that following implementation of the ban on possession and use of tobacco products in October of 2010, smoking in the housing units decreased. (See Morales Aff. ¶¶ 6, 10 & Exs. 6-8; doc. no. 43, p. 4 (declaration of Inmate Bingham that he smoked in the housing unit on a regular basis prior to implementation of the tobacco ban in October of 2010).) Although Plaintiff indicated that one of his former cell mates smoked tobacco and marijuana on a single occasion following the smoking ban, Plaintiff stated that the inmate was immediately transferred to a segregated confinement unit as a result of the infraction. (Pl. Dep., pp. 45-47.)

Taken as a whole, the evidence presented by both parties concerning JSP's smoking policies further demonstrates Plaintiff's inability to satisfy the objective prong of his ETS claim. Of course, neither policy negates the possibility that Plaintiff was exposed to ETS. However, the fact that JSP had and enforced a policy prohibiting indoor smoking reduces the likelihood that Plaintiff was exposed to unreasonably high levels of ETS. See Kelley, 400 F.3d at 1284 (finding the plaintiff failed to establish the objective prong, in part because "the facility had a no-smoking policy in place, and that any inmate caught smoking inside would be disciplined"). Plaintiff does not alter this conclusion by presenting evidence that prison officials gave inadequate smoking breaks, that the policy did not completely eradicate indoor smoking, and that prison officials sometimes enforced the policy by giving warnings or

15

assigning extra duties rather than issuing disciplinary reports. See id. (finding the plaintiff's assertion that prisoner's sometimes smoked indoors despite the indoor smoking ban insufficient to alter the conclusion that he had failed to meet the objective element).

More importantly, the ban on tobacco products implemented in October of 2010 effectively demonstrates that Plaintiff was not exposed to unreasonably high levels of ETS after that time.[13] See Helling, 509 U.S. at 35-36 (noting relevance of the fact that the plaintiff had been transferred such that he was no longer subjected to ETS from his cell mate who smoked five packs a day); Kelley, 400 F.3d at 1284 (noting relevance of the fact that plaintiff was no longer subjected to ETS at the prison following his release). Therefore, any risk to Plaintiff's future health is limited primarily to risk caused by his ETS exposure prior to October of 2010, and, as explained above, there is no medical evidence that such exposure resulted in any significant harm to Plaintiff's health.

In sum, given the totality of the relevant evidence, it is apparent that Plaintiff cannot show that he was exposed to unreasonably high levels of ETS that posed a risk to his health so grave as to violate contemporary standards of decency. As a result, he cannot establish an Eighth Amendment violation based on his ETS exposure, and Defendants are entitled to judgment as a matter of law.

### 2. Subjective Element

Even if Plaintiff could satisfy the objective element, which he cannot for the reasons outlined above, his claim would fail on the subjective prong of his claim. It is undisputed

---

[13]Of course, as noted previously, Plaintiff has produced no evidence as to the specific levels of his ETS exposure at any time.

that Plaintiff did not personally inform any Defendant in this action that he was exposed to ETS while incarcerated at JSP. (Pl. Dep., pp. 61-66.) Indeed, the only evidence suggesting that any named Defendant was aware of Plaintiff's ETS complaints is the fact that he filed grievances regarding the matter, one of which was denied at the formal grievance level by Defendant Washington and two of which were denied at the formal grievance level by Defendant Morales. (Pl. Dep., Exs. 1-3.) However, as Defendants are quick to point out, these grievances set forth nothing beyond general allegations that inmates smoked indoors in violation of prison policy, and the only indication of the effect on Plaintiff is a vague statement in one grievance that he has "trouble breathing when around second-hand smoke." (See id.; doc. no. 49, pp. 18-19.) Thus, the grievances fail to provide any information regarding the level of Plaintiff's ETS exposure, and they fail to show that Defendants Washington and Morales had "subjective knowledge of a risk of *serious harm* to Plaintiff's health." Cassady, 447 F. App'x at 30 (emphasis added). Indeed, given that Plaintiff has failed to show that he was subjected to unreasonably high levels of ETS such that he was under a risk of serious harm, see supra Part II.B.1, it follows that Defendants were not aware of any serious risk of harm to Plaintiff's health because of ETS exposure. See Scott v. District of Columbia, 139 F.3d 940, 944 (D.C. Cir. 1998) ("[T]here must be an 'objectively intolerable risk' in order for there to be a 'knowing and unreasonable' disregard of it.").

In addition, the adoption of a smoking policy "bear[s] heavily on the inquiry into deliberate indifference." Helling, 509 U.S. at 36. Here, Defendants have shown that JSP had a policy prohibiting indoor smoking prior to October of 2010, at which time they adopted a policy forbidding the use or possession of tobacco products. As explained above, Defendants

17

have shown, and Plaintiff has failed to refute, that JSP prison officials, including Defendants, enforced these policies. See supra Part II.B.1. At most, Plaintiff's evidence shows imperfect enforcement of these policies, which is insufficient to establish deliberate indifference. See Kelley, 400 F.3d at 1284 (finding plaintiff had failed to show deliberate indifference because he had shown, at most, that certain prison officials "were negligent in enforcing the non-smoking policy"); see also Scott, 139 F.3d at 944 ([I]t is hard to see how imperfect enforcement of a nonsmoking policy can, alone, satisfy Helling's subjective element.").

Finally, the Court rejects Plaintiff's apparent contention that Defendants violated his Eighth Amendment rights simply by allowing the mentally ill inmates in his dormitory to purchase tobacco products prior to the tobacco ban. The notion that Defendants could be held liable merely for allowing inmates, mentally ill or otherwise, to purchase tobacco products is plainly at odds with the governing case law, which requires Plaintiff to establish the previously discussed objective and subjective elements in order to prevail on his Eighth Amendment ETS claim.

In sum, Defendants have met their burden of showing that Plaintiff cannot satisfy the required elements of his Eighth Amendment claim, and Plaintiff has failed to show a material issue of fact that precludes summary judgment. Therefore, the Court concludes that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment should be granted, and Plaintiff's motion for summary judgment should be denied.[14]

---

[14]Having determined that Defendants are entitled to summary judgment for the reasons set forth herein, the Court will not reach Defendants' remaining arguments, including those related to their assertion of qualified immunity.

## III. CONCLUSION

In sum, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 40), that Plaintiff's motion for summary judgment be **DENIED** (doc. no. 43), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 25th day of July, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE